ELLIS, Judge,
The plaintiff in this suit seeks to recover total and permanent disability benefits under the Workmen’s Compensation Act LSA-R.S. 23:1 et seq., for injuries received in an accident which occurred on May IS, 1959. The plaintiff was employed as a member of a logging crew cutting, loading and hauling pulpwood near the Mississippi levee in East Baton Rouge Parish. During the logging operations he decided to cut down two trees with a power saw. When he cut one of the trees it fell against another tree, and as he was cutting this tree in order to free both of the trees, the small tree split, a portion of the tree flying up and striking plaintiff on the right side of his head.
He was taken for immediate treatment to the Reiger Clinic, then was referred from there to the Baton Rouge General Hospital where various tests were run for approximately two weeks. The doctors were of the same opinion, that the plaintiff was able to go back to work, although he complained bitterly of pain, headaches, vomiting, nausea and bleeding. He was paid full compensation benefits up to the time of his discharge from the hospital, and certification as being able to return to work and the compensation payments were terminated.
The plaintiff engaged an attorney and was seen by Dr. Rhodes Spedale of Plaque-mine. Dr. Spedale’s findings supported the plaintiff’s complaint that he was disabled because of the accident, the trauma causing an injury to the vagus nerve which in turn caused ulcers.
In due course, the plaintiff filed suit and after a trial on the merits, judgment was rendered for written reasons assigned, dismissing the plaintiff’s demands, hence this appeal.
It has been repeatedly held that the plaintiff in a Workmen’s Compensation case must, as in other civil cases, bear the burden of proof and must establish his case by a reasonable preponderance of the evidence. Edwards v. Aetna Casualty & Surety Company, La.App., 108 So.2d 126. The establishment of a claim to the extent only of a possibility or even unsupported probability is not sufficient. Page v. Tremont Lumber Company, La.App., 108 So.2d 1.
As a pre-requisite to recover Workmen’s Compensation, an employee must prove an accident within the scope of and in the course of his employment, and also show a causal connection between such accident and the injuries and resulting disability. See Simms v. Brown Paper Industries, La.App., SS So.2d 311; Houston v. Atlas Sewing Centers, Inc., La.App., 121 So.2d 301.
*748 The parties to this suit agree that the plaintiff suffered an accident within the scope and in the course of his employment. The compensation payments were made to him for the two weeks that he was in the hospital. Upon his. discharge they were terminated.
The only issues in this case are whether the plaintiff is, in fact, disabled and if his disabilities are the result of the accident.
In order to determine whether there was any causal connection between the tree striking the plaintiff on the head and any resulting disabilities he claims it will be necessary to carefully consider the medical evidence introduced into the record.
Counsel for plaintiff contends that the plaintiff’s employer, by immediately taking him to the company doctor and placing him in the hospital for rather extensive neurological tests, did not do so for the benefit of the employee, but for the benefit of the employer.
The record does reflect that the plaintiff was immediately taken to the Reiger Clinic where he was examined by a Dr. Jere D. Mellili. Dr. Mellili took the patient’s history and in his examination found small abrasions under the left eye with a large lump over the right forehead that the doctor did not feel had any relationship to the injury, since it was soft as opposed to being tight, bluish and painful. The skull x-rays taken of the patient were negative for any type of fracture or increase in pressure in the cranium.
The history given by the patient was that he had been unconscious for five to ten minutes and that the accident caused the knot on his forehead, which it is now admitted was not the truth as he had this enlargement for a number of years.
This is in direct contradiction to the testimony of the only witness to the accident, the defendant, Mr. C. E. White. Mr. White testified that when the tree split and hit the plaintiff, it did not knock him down nor did he lose consciousness. We point this out merely because in the various histories taken by several doctors who examined the plaintiff he gave a history of being knocked unconscious. The plaintiff was given a complete neurological examination on May 16, 1959, and returned again on the 18th, both examinations resulting in negative findings. On the 20th of May he was examined by a Dr. Lloyd Champagne, who also could not find any objective evidence of injury to the plaintiff. The plaintiff was placed on a mild analgesic and told if the symptoms persisted to return, which he did on May 22, 1959 and was given another neurological examination which proved negative.
Upon being cross-examined, Mr. Mellili testified that the vagus nerve could be stimulated by a blow on the head and if the blow resulted in damage to the vagus nerve that it could cause ulcers. However, he qualified this by stating that he did not think there was any damage to the plaintiff’s head because of the various tests being negative. Dr. Mellili also took a test for blood in the stool, finding that he had a normal brown stool, but that there was some evidence of blood in the G. I. tract, which he did not attribute to the accident and injury.
Dr. Champagne’s testimony related only to one visit of the plaintiff, as he was assisting Dr. Mellili on a day that the latter was not present at the Reiger Clinic. However, from his examination he did not feel that there were any substantiated objective symptoms that would support plaintiff’s complaints.
An internal specialist examined the plaintiff on May 22, 1959, in consultation with Dr. Mellili at the Reiger Clinic. After taking a cursory neurological examination, the doctor found no abnormalities.
Since he was complaining of waking up and finding blood in his mouth, he was hospitalized in order that another set of *749 skull films could be taken, x-rays of the sinuses, together with a G. I. Series, all of the tests being negative. Neither the hospital records nor any of the doctors testifying on behalf of the defendants, noticed that the plaintiff had spit or coughed up any blood at all.
Dr. Edelman, a neurologist, was asked to evaluate the plaintiff from a neurological standpoint and to make an E.E.G. Plaintiff was given a complete neurological examination, as well as the G. I. Series, chest x-rays, and x-ray of the sinuses, blood •count, and stool examination. The findings from all these tests were essentially negative. Dr. Edelman testified on behalf of the defendants that he examined the plaintiff on May 30th, 1959. The doctor checked the plaintiff from the point of view from all of his cranial nerves finding that all of the cranial nerves were normal. The doctor gave a detailed analysis of his examination of each of the cranial nerves and the reasons that he found that the tests were negative and all of the cranial nerves to be normal. The doctor reviewed the x-ray films finding that they showed nothing to suggest intracranial pressure. His conclusion was that the x-rays of the skull were completely normal. In addition, he gave the plaintiff an electroencephalogram, the result being that the test showed the plaintiff to be normal. Upon being questioned as to whether he felt the plaintiff had a basal skull fracture, the doctor felt that many patients having a skull fracture usually have bleeding from one ear, being a symptom that was not found in this particular plaintiff. On being questioned as to whether the va-gus nerve could have been damaged from the accident, Dr. Edelman testified that the vagus nerve originated in the brain stem .and goes through one of the openings in the skull, the jugular vein, and down the neck along with the carotid artery and the jugular vein. The doctor testified that it is very difficult to determine whether the vagus nerve is injured or not because the function of the vagus nerve is not completely understood and that its distribution is vague.
Dr. Edelman felt that one of the functions of the vagus nerve is that it gives off to the voice box and that had there been any damage to it, that many times a hoarseness is associated with the damage to the vagus nerve because the vocal cords are paralyzed as a result of injury to the vagus nerve. The doctor also based his opinion as to plaintiff’s ability to return to his usual occupation upon the fact that the E.E.G. which was taken to determine whether the plaintiff had any brain damage was normal, the doctor feeling that if the plaintiff had any concussion that he had made a good recovery from it. Dr. Edelman also testified that if the plaintiff did suffer a concussion and an E.E.G. was taken at the time of the injury there would be certain physiological changes that would show up since the E.E.G. is one of the most sensitive indicators of the brain injury known to medical science.
As a basis of his opinion, Dr. Edelman took his clinical findings together with the E.E.G. and concluded that the plaintiff was able to work, and that he did not suffer any disability as a result of the accident.
The crux of plaintiff’s case is based upon the testimony of Dr. Spedale, which is corroborated to some degree by that of Dr. Hansen.
The plaintiff went to Dr. Spedale on June 5, 1959, with his usual complaints of headaches, dizziness and bleeding from the mouth and nose, nausea and vomiting. The plaintiff was admitted to the Plaquemine Sanitarium where x-rays were taken and a G. I. Series included.
Dr. Spedale testified that there could be a relationship that is not uncommon between head injuries and the flaring up of the gas-tro-intestinal tract. He testified that the vagus nerve being one of the twelve cranial nerves, supplies the region including the stomach and when an injury happens to the head or brain it could cause the man to have a flare up in the intestinal tract at the same time. He testified that many times *750 the x-ray would not show this damage and that many times the electroencephalogram would not pick up the brain damage, this being particularly true in skull fractures. He stated that head injuries will have symptoms that will not manifest themselves from six months to one year after an accident on many occasions. They will not show anything. The doctor testified that the manner in which the tree struck the plaintiff could have caused a sudden throwing forward or backward of the plaintiff’s head and caused an injury to the base of his brain.
As to a basal skull fracture, Dr. Spedale testified that in many of these cases nature protects the person from intracranial pressure by intracranial bleeding, as well as bleeding from the mouth, nose and ears, in order to relieve the intracranial pressure. Dr. Spedale also testified that the plaintiff was bleeding from the nose. He did not take a spinal tap in order to determine whether there was intracranial pressure on the nerves. The doctor also testified that he could not find any evidence of a duodenal ulcer in the stomach when the x-rays were taken with the use of barium. However, he did state that when the man points to the pit of his stomach complaining of pains in his stomach, as well as passing of blood in his stools, it is possible that there is a gastric ulcer which is extremely hard to find even with the benefit of an x-ray. He stated that sometimes many months and many examinations, together with many x-rays are required before a posterior ulcer will be picked up.
After a careful reading and analysis of the medical testimony which we have summarized above, we find the plaintiff was given extensive examinations by Dr. Mellili, Dr. Stotler, and Dr. Edelman, Dr. Stotler and Dr. Edelman being recognized experts in the field of internal medicine, and neurology, respectively.
In spite of intensive tests made by these doctors, they were unable to substantiate any objective or clinical findings whatsoever to support plaintiff’s complaints. In considering Dr. Spedale’s testimony, our Learned Brother below stated as follows, to-wit:
“Dr. Spedale’s testimony is replete with reference to plaintiff’s bleeding. It is submitted that his positive testimony as to having personally observed any bleeding is scant and vague. It may not be amiss to here remark that in addition to listening and taking notes while the doctor testified, the writer listened again to all his testimony the day this is being written, the day following the trial. Assuming some bleeding, and considering the evidence of blood in the stool, there is no evidence of blood in the stool, there is no evidence that it is referable to the accident or -that it did not exist prior to the accident.”
An analysis of Dr. Spedale’s testimony, particularly considered in contrast to that of Dr. Edelman’s, would show that the reasoning of the lower court is correct.
Although the plaintiff argues that positive testimony must be accepted over negative in citing Hair v. Williams Bros., La.App., 144 So. 800 at 802, we think there is a definite negative type of reasoning found here in Dr. Spedale’s testimony. In short, Dr. Spe-dale has testified that according to the general type of cases the plaintiff’s complaints and his findings are not consistent, however, that in exceptional eases the plaintiff’s complaints can be substantiated, both as to the injury to the skull which would result in an injury to the vagus nerve, as well as injury to the vagus nerve causing the hyper-acidity in the stomach, which would in turn result in the ulcers.
We agree with the findings of the lower court that the plaintiff may have some disability, but there is no evidence which shows any causal connection between such disability and the accident.
Therefore, for the reasons hereinabove assigned, the judgment of the District Court is hereby affirmed.
Affirmed.