LANDRY, Judge.
This action was initiated as a claim for maximum workmen’s compensation benefits allegedly due plaintiff, Johnny Davis, for total permanent disability purportedly resulting from the loss of sight in his right eye while in the employ of defendant, Buquet & LeBlanc, Inc. Plaintiff’s said employer (the sole defendant in the initial proceeding) answered the suit setting up certain pleas and defenses as hereinafter related and also reconvened praying for judgment in the sum of $50.00 representing *60 an unpaid loan in that amount advanced petitioner. In addition, defendant filed a third party demand against Pacific Indemnity Company (sometimes hereinafter referred to simply as “Pacific”), insurer of defendant, Buquet & LeBlanc, Inc., at the time of the accidents which purportedly resulted in plaintiff’s disability, praying for judgment against Pacific for attorney’s fees due third party plaintiff by said insurer because of said third party defendant’s asseverated refusal to defend this action. After trial below judgment was rendered in favor of defendant employer rejecting and dismissing plaintiff’s demand for compensation and also in favor of said employer on its reconventional demand for money judgment in the sum of $50.00 against plaintiff. The third party demand of defendant, Buquet & LeBlanc, Inc., against Pacific, for alleged attorney’s fees, was rejected and dismissed. From said-judgments plaintiff has appealed complaining the trial court erroneously rejected his demand for compensation and defendant and third party plaintiff, Buquet & LeBlanc, Inc., has likewise appealed contending the trial court erred in rejecting its claim against Pacific for attorney’s fees. Third party defendant, Pacific, has answered both said appeals.
Since the legal and factual issues involved in plaintiff’s main demand for compensation benefits are wholly unrelated to and independent of the third party demand of defendant employer for attorney’s fees allegedly due by its compensation insurer, each said demand will be herein separately considered for the sake of clarity.
A detailed statement of the case (including a chronological narration and review of the numerous filings and actions taken by the parties prior to institution of suit) will be deferred until consideration of the third party demand of defendant is undertaken, except insofar as reference to such matters may be necessary to a proper understanding of the issues presented by plaintiff’s main demand which we will consider first.
THE PRINCIPAL DEMAND OF PLAINTIFF
On May 16, 1962, plaintiff-appellant filed this action praying for maximum workmen’s compensation benefits for alleged total permanent disability assertedly incurred as the result of two accidents purported to have occurred during the course and within the scope of his employment by defendant, Buquet & LeBlanc, Inc., (sometimes hereinafter referred to simply as “employer”), on February 4 and August 8, 1958, respectively, involving injuries to plaintiff’s right eye causing total blindness therein. In substance, plaintiff alleged he was paid wages in lieu of compensation from the dates of said accidents until April 9, 1962, and additionally averred the injuries to his eye did not manifest themselves until the development of unilateral glaucoma and a cataract resulted therefrom producing blindness on which his claim is predicated. Plaintiff’s petition was ultimately amended to pray for judgment for compensation for 100 weeks for the loss of an eye rather than for 400 weeks compensation for alleged total permanent disability. Subsequent to institution of suit, namely, on June 15, 1962, plaintiff moved for and obtained a preliminary judgment ordering payment to him of workmen’s compensation benefits at the rate of $35.00 weekly commencing April 9,1962,, until a hearing on the merits of his claim was fixed at employer’s request. Following trial on the merits, the learned trial court rendered judgment on July 19, 1962, dismissing petitioner’s main demand, vacating the preliminary judgment of June 15, 1962, and rendering judgment on the reconventional demand of defendant employer in the sum of $50.00. In oral reasons dictated into the record, the learned trial judge found no causal connection between the accidents which occurred in 1958, and the subsequent loss of plaintiff’s right eye. In view of said finding, he considered it unnecessary to pass upon the pleas of one and two years prescription interposed on behalf of defend *61 ant employer and third party defendant, Pacific.
It is conceded plaintiff suffered two minor accidents involving his right eye while in the employ of defendant during the months of February and August, 1958. Likewise, it is undisputed plaintiff lost virtually no time from work as a result of either incident but continued in the employ of defendant (receiving the same wages for the same work) until April 9,1962, on which date plaintiff left his employment because of the condition of his eye.
Regarding the pleas of prescription filed by defendant employer and third party defendant, Pacific, esteemed counsel for plaintiff-appellant contends prescription did not run against appellant until April 9, 1962, on which date wages in lieu of compensation ceased to be paid by defendant employer. In this connection, it is contended plaintiff worked the intervening three years in pain and was never able to fully perform his duties in the same manner as before the accidents. It is significant, in this regard, the record shows defendant employer was never advised by plaintiff that plaintiff was suffering pain and was totally unaware and unapprised of plaintiff’s alleged decreased efficiency of performance. The argument advanced by learned counsel for appellant is admittedly ingenious but one which need not be answered herein considering the issue of prescription need not be resolved and is entirely pretermitted in view of our conclusion the record fails to establish any causal connection between the aforementioned accidents and the loss of sight of plaintiff’s right eye
It is an elementary jurisprudential rule that a plaintiff in a suit for workmen’s compensation benefits bears the burden of proving his demand by a preponderance of the evidence. As an indispensable prerequisite to recovery claimant must prove a causal connection between the accident occurring within the course and arising out of his employment and the injuries and disability allegedly resultant therefrom. Fortenberry v. Kingsville Timber Co., La. App., 136 So.2d 746; Spivey v. Aetna Casualty & Surety Company, La.App., 127 So.2d 297; Houston v. Atlas Sewing Centers, Inc., La.App., 121 So.2d 301.
In the case at bar plaintiff maintains his eye remained irritated as a result of the accidents occurring in 1958. In essence plaintiff contends his eye burned and ran water to such extent he constantly and habitually rubbed the injured eye in an effort to relieve the discomfort. Learned counsel for plaintiff argues the accidents in question, either directly or in conjunction and connection with the constant rubbing of the affected member, resulted in the formation of a cataract which condition induced glaucoma, and further that conditions mentioned, either individually or collectively, were responsible for the loss of sight. Plaintiff, however, offered no medical evidence in support of his contention the traumatic injury to his eye in 1958 resulted in blindness which manifest itself in 1962.
In support of its contention there was no causal connection between plaintiff’s accidents and the loss of sight in plaintiff’s eye, defendant offered the testimony of three eye specialists whose testimony will hereinafter be considered separately.
Dr. E. J. Herpich, an eye, ear, nose and throat specialist, treated plaintiff on February 4 and 5, 1958, for an injury resulting from muriatic acid which entered plaintiff’s right eye. Upon examination some conjunctival injection was noted as well as dilation of the vessels over the surface of the eyeball, said latter condition evidenced by an increase in redness of the white of the eye. In general, however, plaintiff’s eye was found to be in good condition and plaintiff was discharged after the second visit. On August 7, 1958, plaintiff was again seen by Dr. Herpich, this visit being prompted by the necessity for treat- *62 merit for an injury produced when fragments of steel wool fell into plaintiff’s right eye and entered the cornea resulting in minor injury — the cornea being the transparent part covering the front of the eye in which the pupil is found. Plaintiff was treated by Dr. Herpich on August 7, 8 and 11, 1958, on which latter date plaintiff’s eye was considered perfectly healed and plaintiff was discharged. Plaintiff returned to Dr. Herpich on April 26 and 28, 1961, at which time it was noted plaintiff suffered a loss of reading vision in his right eye but could still distinguish between light and darkness. Examination revealed plaintiff had a cataract on the posterior surface of the lens, or possibly an intraocular tumor. According to Dr. Herpich, a cataract is an increased opacity of some part of the eye, in any degree, partial or total, on the anteri- or or posterior surface of the lens. Dr. Herpich further explained the causes of cataracts may be constitutional,, dietetic, traumatic or unknown. Pie frankly conceded all causes of cataracts are not known to medical science. While acknowledging trauma could result in a cataract, he was firmly of the opinion to produce such result, trauma must be of sufficient severity to penetrate the cornea and lodge in the lens. In substance Dr. Herpich was of the opinion his findings of either cataract or intra-ocular tumor in 1961 could not possibly have resulted from either accident suffered by plaintiff in 1958. Dr. Herpich reached the stated conclusion predicated on the finding the injury resulting from the muriatic acid incident involved only a superficial disturbance of plaintiff’s eye and on the occasion of the second accident nothing entered plaintiff’s eye with sufficient force to penetrate the cornea. In short, Dr. Herpich found both accidents resulted in relatively minor injury and had no connection with plaintiff’s eventual blindness. With regard to the effect allegedly produced by plaintiff’s habitual rubbing of his right eye, it was the opinion of Dr. Herpich the irritation thus produced might result in keratitis (inflammation of the cornea) but would not produce a cataract which involves the lens situated below the cornea.
Dr. Courtland P. Smith, an eye specialist, examined and treated plaintiff April 9, 10, 11, 12, 13 and 16, 1962. He found plaintiff’s eye very inflamed and painful and tender to touch. Dr. Smith diagnosed the condition as glaucoma (an increase in intraocular tension or pressure). Glaucoma, according to Dr. Smith, is caused either by an increase in production of fluid in the eye, or faulty drainage mechanism which does not adequately dispose of eye fluid as it is produced. Finding plaintiff to be suffering from an iritis (inflammation of the iris), Dr. Smith believed plaintiff’s glaucoma resulted from faulty drainage apparatus. Dr. Smith also noted the presence of the cataract and concluded neither condition was due to plaintiff’s injury. In Dr. Smith’s opinion, excessive wiping or rubbing an eye because of watering or other irritating condition would not affect a cataract and neither would it cause inflammation to such degree as to impair drainage of the eye and cause glaucoma, except possibly under circumstances amounting to the deliberate gouging of the eye by a mentally deranged individual.
Dr. James R. Godfrey, an opthalmologist, examined plaintiff on only one occasion, namely, April 17, 1962. At this time plaintiff related his eye became painful approximately nine days previously. Examination disclosed plaintiff to be suffering from acute congestive glaucoma of the right eye. Dr. Godfrey could not establish the cause of plaintiff’s condition. He expressed the professional opinion glaucoma usually occurs from causes unrelated to trauma although he readily conceded the condition does in fact sometimes arise from traumatic origin. In essence, Dr. Godfrey stated he could find no evidence of traumatic injury to plaintiff’s eye and believed the condition found resulted from anatomical disease. At the time of his examination plaintiff’s eye was so cloudy from increased pressure —one of the symptoms of acute congestive *63 glaucoma — Dr. Godfrey was unable to see into the eye to determine the state of the lens and because of this condition he was unable to state whether plaintiff had a cataract. He shared the opinion of the other experts to the effect wiping or .rubbing the eye could not cause glaucoma but conceded unremitting pressure over a prolonged period of time has been known to result in the disease.
From the foregoing we unhesitatingly conclude (as did our esteemed brother below) defendant has, by a clear preponderance of evidence, shown a total absence of causal connection between the accidents which occurred in 1958, and the loss of sight for which plaintiff seeks compensation in this proceeding. It follows the judgment of the trial court rejecting and dismissing plaintiff’s said demand was eminently correct.
THE RECONVENTIONAL DEMAND OF DEFENDANT, BUQUET & LeBLANC, INC.
In his specification of errors counsel for plaintiff appellant has made no express mention of the judgment of the trial court in favor of defendant employer in the sum of $50.00, with interest. Presumably, therefore, counsel for appellant did not intend to appeal this portion of the judgment adverse to his client. On this issue the testimony of Alphonse D. Buquet, Secretary of defendant employer, is uncontroverted to the effect the sum of $50.00 was loaned plaintiff in April, 1962, and has not been repaid. Under the circumstances shown the judgment in favor of defendant employer will not be disturbed.
THIRD PARTY DEMAND OF DEFENDANT, BUQUET & LeBLANC, INC. FOR ATTORNEY’S FEES
In the alternative, the third party petition of defendant, Buquet & LeBlanc, Inc., prays for judgment against third party defendant, Pacific, for any amounts awarded plaintiff and attorney’s fees assertedly due for Pacific’s alleged breach of its contractual obligation to defend its insured.
The issue presented is whether an insurer is liable to its assured for damages in the amount of reasonable attorney’s fees for alleged failure to defend this action as required by the terms of Pacific’s policy in. force at the time of the accidents in February and August, 1958.
Third party defendant resists the demand for attorney’s fees contending there was no refusal to defend the action for the reason Pacific was never notified of the filing of the suit and never called upon to defend the action. Alternatively, Pacific argues its insured is not entitled to attorney’s fees herein because said insured incurred no expense in this regard inasmuch as Maryland' Casualty Company, the current insurer of third party plaintiff, defended this action without fee or charge.
Third party plaintiff, of course, maintains Pacific declined defense of the suit and further argues in view of such refusal it is entitled to attorney’s fees irrespective of whether attorney’s fees were incurred in resisting plaintiff’s main demand.
Pacific concedes it was employer’s compensation insurer on the dates of the two accidents upon which plaintiff’s claim is predicated. Subsequently, however, on December 1, 1958, Maryland Casualty Company became employer’s compensation insurer and continued as such until the date of institution of the present action.
On April 24, 1962, counsel for plaintiff addressed a letter to plaintiff’s employer advising said employer of plaintiff’s claim. Although the precise extent of the claim was not set forth, counsel’s letter of demand or notification referred to total blindness in plaintiff’s right eye. Upon receipt of the letter of demand, employer forwarded the correspondence to the agency which handled its insurance. In turn, the agent forwarded counsel’s letter of demand to Pacific on April 30, 1962, noting that claims for plaintiff’s injuries of February 4 and August 8, 1958, were paid by Pacific. By *64 letter dated May 4, 1962, Pacific advised employer’s agent, McKnight, its files had been destroyed and requested certain additional information regarding plaintiff's claim to facilitate obtention of a duplicate file from Pacific’s home office in California. Pacific’s letter of May 4, 1962, further advised employer’s agent that plaintiff’s initial claims occurred three and one-half years previously and suggested the possibility the employee was presenting a claim arising from an accident occurring subsequent to the incidents of February 4 and August 8, 1958, which position is quite understandable considering the letter of demand from plaintiff’s counsel made no mention of the 1958 accidents and referred only to plaintiff’s complaints in April, 1962. In concluding its said letter of May 4, 1962, Pacific expressed the opinion the claim should in all probability be forwarded to employer’s present insurer.
By letter dated May 10, 1962, employer’s agent, McKnight, replied giving Pacific the requested information and also advising notice of the claim had been given the present insurer. In addition, Pacific was informed the only reports of an eye injury sustained by plaintiff were those occurring in 1958, at which time Pacific was employer’s compensation insurer.
The present suit was filed by plaintiff on May 16, 1962, and service thereof made on employer’s registered agent for service of process. Because said registered agent was no longer affiliated with employer, defendant employer did not receive the served ■copy of plaintiff’s petition until June 22, 1962, on which date a representative of defendant, Buquet & LeBlanc, Inc., presented plaintiff’s formal petition to an attorney-at-law who represented defendant employer. Believing that Maryland Casualty Company (employer’s then insurer) was a party to the litigation, defendant’s representative, Bu-■quet, discussed the matter with a Mr. May-field who represented Maryland Casualty Company.
On June 26, 1962, third party plaintiff’s current insurer, Maryland Casualty Company, addressed a letter to third party plaintiff agreeing to defend this action without fee or charge subject to the understanding that by so doing, it nevertheless .reserved all of its right under its policy and would not thereby incur any obligation to pay any judgment based on an accident occurring to plaintiff prior to December 1, 1958, the effective date of its policy. Third party plaintiff acknowledges its said current insurer has fulfilled the obligations assumed in its letter of June 26, 1962, and has neither made nor intends to make any charge for defending this action.
Another significant event transpired on June 26, 1962, namely, attorneys for defendant employer filed its third party demand naming Pacific third party defendant and praying for judgment against said third party defendant for all sums which employer might be obligated to pay plaintiff employee as well as for attorney’s fees allegedly due third party plaintiff. On the following day defendant employer filed an answer and reconventional demand, answers to certain interrogatories propounded by plaintiff, a motion to fix the matter for trial on July 1, 1962, and a motion to annul and set aside the preliminary judgment rendered in favor of plaintiff employee.
Our review of the record discloses it is not shown with certainty when service of defendant’s third party demand was made upon Pacific as third party defendant herein. So far as we can determine, it will be noted from the above narration of events, until such time as service of the third party complaint was made upon Pacific, said third party defendant had no notice of the suit and was unaware plaintiff’s claim was based upon the accidents which occurred when Pacific was the compensation insurer of defendant employer. Of considerable significance is the fact that it is apparent the insured employer was already represented by counsel of his own choosing at the time said employer’s third party demand was served upon its insurer, Pacific. Moreover, it is conceded no demand was ever made *65 upon third party defendant to defend the suit and the third party petition itself does not call upon Pacific to resist the employee’s claim but merely to pay any judgment rendered against third party petitioner and respond to third party plaintiff in attorney’s fees for alleged failure to fulfill the obligations assumed by Pacific under its contract.
Learned counsel for third party plaintiff concedes the policy issued by Pacific contains the following provision:
“If claim is made or suit or other proceeding is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.”
From the foregoing analysis of events, it is apparent the insured herein failed to give Pacific the notice of suit required by the hereinabove quoted policy provision. Instead the insured, laboring under the impression its current insurer, Maryland Casualty Company, was obligated to tender a defense to plaintiff’s action, called upon Maryland Casualty Company rather than third party defendant. Employer concedes Pacific was never notified of the suit prior to institution of the third party petition and also acknowledges Pacific was never requested — not even in the third party complaint — to defend the action. Considering Pacific never declined its obligation to defend this action and received no notice of institution of suit as required by its policy, it cannot be adjudged to have breached its contractual obligation in this regard.
The reasons hereinabove set forth obviate the necessity of passing upon the issue of employer’s alleged entitlement to attorney’s fees notwithstanding no expense was incurred by employer in the defense of this action.
Accordingly, the judgment of the trial court is, in all respects, affirmed.
Affirmed.